AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

Southern District of Ohio 

FILED
RICHARD W. NAGEL
CLERK OF COURT

2020 MAR 10 PM 3:09

U.S DISTRICT COURT
SOUTHERN DIST OHIO
EA. DIV. COLUMBUS

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Black LG cell phone bearing unknown serial number and with included SIM card

)
)
)
)
)
)

Case No. 2:20-mj-182

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):* Black LG cell phone bearing unkonw serial nubmer and with included SIM card that is currently located at the Forensics Lab of the Delaware County Sheriff's Office, 149 N. Sandusky St., Delaware, OH 43015

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 471 & 472 | Counterfeiting |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*TFO C.C. [signature]*
_____
*Applicant's signature*

*TFO C.C. Gannon*
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-10-20
_____
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
_____
*Printed name and title*

MSH

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

**IN THE MATTER OF THE SEARCH OF**

Black LG cell phone bearing unknown serial number and with included SIM card that is currently located at the Forensic Lab of the Delaware County Sheriff's Office, 149 North Sandusky Street, Delaware, OH 43015.

2:20-mj-182

Case No. ~~2:20-MJ-100~~

**MAGISTRATE JUDGE
CHELSEY M. VASCURA**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Task Force Officer (TFO) C.C. Gannon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I, TFO C.C. Gannon, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the following portable electronic device: black LG cell phone with unknown serial number and with included SIM card, believing evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 471 and 472 are located within said device. Since this affidavit is being submitted for the limited purposes of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probably cause that the device described above was used in committing and contains evidence of violations of Title 18, United States Code, Sections 471 and 472. I have not withheld any information or evidence that would negate probable cause.

2.　　　Your affiant is currently employed by the Delaware County Sheriff's Office and assigned to the Columbus Resident Office of the United States Secret Service (USSS) as a Task Force Officer (TFO). I have been employed by Delaware County Sheriff's Office for 17 years and 11 months and assigned to the USSS for approximately 7 years. I have completed the Ohio Peace Officers Training Academy (OPOTA) and specialized investigations training through OPOTA. As a Deputy Sheriff, Detective, and Task Force Officer, my responsibilities include criminal investigations involving financial crimes, manufacturing, possession, and uttering of counterfeit currency and other violations with a nexus to the United States Secret Service. I am presently investigating a case involving Counterfeit Currency, as set forth in Title 18 United States Code, Sections 471 and 472. I have experience with and received training in, the investigation of Counterfeit (CFT) U.S. Currency.

3.　　　This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## TECHNICAL TERMS

4.　　　Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.　Wireless telephone: A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

2

include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

3

5. Based on my training and experience, and observation of the device, I know that the black LG cellular phone has capabilities that allow it to serve as a mini handheld computer, electronic storage device, wireless telephone, digital camera, digital video recorder, wireless internet connectivity, portable media player and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, where the device has been, and what messages were sent to or from the device via text message, Facebook messenger, Texting apps, or email.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

6. Based on my knowledge, training, and experience, I know that electronic devices, including cellular phones, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

Searches and seizures of evidence from computers and other digital media devices commonly require agents to download or copy information from the computers and/or handheld digital storage devices (i.e. smart phones), their components, or seize most or all computer items, to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Computer storage devices (such as smart phones and their components) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine

4

whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search at the site of the seizure of the device; and

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

8.      In addition, there is probable cause to believe that the cellular phone and its internal storage capacity, as well as its components, specifically the SIM card contained within the phone, are all instrumentalities of the crime(s), within the meaning of 18 U.S.C. § 471 and 472 and should all be seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

9.      The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a. Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;
b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;
c. surveying various files directories and the individual files they contain;
d. opening files in order to determine their contents;
e. scanning storage areas;
f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and/or
g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described.

## BACKGROUND AND PROBABLE CAUSE

10. The following information is personally known to me or was reported to me by other law enforcement officers involved with, and otherwise knowledgeable of the facts of this case.

11. This investigation began on or about January 13th, 2020 when the Delaware County Sheriff's Office (DCSO) responded to the Pilot Travel Centers, 7680 St. Rt. 37 East Sunbury, OH  43074 on a report of a white male about 30-40 years old with dark color facial hair and a black coat who got out of a Toyota 4-Runner and attempted to pass a CFT $20 Federal Reserve Note (FRN).  Upon arriving at the store, the Deputy was unable to recover the FRN as the employee told the suspect that it was fake and gave it back to him.  The suspect was later identified on 01-28-2020 as William D. Sheets II (Sheets).

12. Once Sheets was identified, I was able to determine that Sheets had previously passed several different CFT $20 FRN's on the following dates and locations:

    a)  Wendy's, 2065 US 23 N, Delaware, OH

        Two (2) CFT $20 FRNs were passed on 01-03-2020

    b)  Wendy's, 185 S. Sandusky Street, Delaware, OH

        One (1) CFT $20 FRN was passed on 01-03-2020

    c)  Certified , 2061 US 23 N, Delaware, OH

        One (1) CFT $20 FRN was attempted to be passed on 01-03-2020, but was returned

    d)  Certified , 2061 US 23 N, Delaware, OH

        One (1) CFT $20 FRN was passed on 01-03-2020

e) Sunco, 111 Superior Street, Marion, OH

   One (1) CFT $20 FRN was passed on 01-05-2020

f) Pilot, 7680 St. Rt. 37 E, Sunbury, OH

   One (1) CFT $20 FRN was attempted to be passed on 01-12-2020, but was returned

g) Speedway, 2381 US 23 N, Delaware, OH

   One (1) CFT $20 FRN was attempted to be passed on 01-24-2020, but was returned

h) Big Lots, 2081 US 23 N, Delaware, OH

   Two (2) CFT $20 FRN's were passed on 01-25-2020

i) Pilot, 7680 St. Rt. 37 E, Sunbury, OH

   One (1) CFT $20 FRN was attempted to be passed on 01-27-2020, but was returned

j) Big Lots, 2081 US 23 N, Delaware, OH

   One (1) CFT $20 FRN was passed on 01-29-2020

13. On January 31st, 2020, William D. Sheets, II was a passenger in a vehicle stopped by Delaware Police Department. Inside the vehicle they located a black and blue book bag which was later determined to belong to Sheets. Inside the book bag was a blank pack of resume white paper, one open box of resume white paper that contained numerous backs of CFT $20 FRN's, a brown purse that contained two CFT $20 FRN's that both were bearing serial numbers MF17972447J, and one HP Tri-color printer cartridge. Also located in the vehicle were five additional CFT $20 FRN's that were being serial numbers ML56984487G, JF14047061D, IA72252056A, ML86527659M, and ND39498346A along with a Big Lots Reward Card that was found to belong Sheets.

7

14. Continuing on the same date, a Search Warrant was conducted at 796 Prospect Mt. Vernon Road Marion, OH which is where Sheets was temporarily residing at.  On the outside of the residence three miscellaneous HP printer parts were located along with two pieces of counterfeit trimmings.  In a fire pit behind the residence, there were charred printer parts and charred pieces of CFT FRN's that were bearing the following serial numbers:    ND07457824C,    MD01946549F,    ND07457824C,    ND64510427B, ND08788945C,  ND07457824C,  ND46326536B,  MJ64264072A,  ND46226536B, ML38267537K, MB67734926J, and ND46326536B,

15. On February 3rd, 2020, Sheets was interviewed and acknowledged he had been manufacturing CFT $20 FRN's, and further admitted to destroying the printer and various CFT $20 FRN's in the fire pit.  Sheets also admitted to possessing other CFT $20 FRN's, admitted that he was the owner of the black and blue backpack seized in the vehicle stop, and that he had passed CFT $20 FRN's at various locations throughout the Southern District of Ohio.  Sheets was shown several video surveillance photos of his passing fraudulent currency, and he positively identified himself in several of the photos.

16. Additional information has been learned that some of these bills have been passed in not only Delaware County, but in Franklin, Knox County, Marion County, Seneca County, and once in Myrtle Beach South Carolina as well.

17. On March 6th, 2020, TFO Gannon conducted a review of the Serial Numbers on the CFT $20 FRNs recovered.  A search of the USSS CFT database revealed passing history for nine (9) of the 18 of the CFT $20 FRN serial numbers passed/recovered in this investigation.  There was no passing history for nine (9) of the CFT $20 FRN serial

numbers that have been recovered.  To date the CFT $20 FRN's that have a passing history have resulted in a total of $860.00 worth of loss from 43 passed CFT $20 FRN's.

18. The Device is currently in the lawful possession of the Delaware County Sheriff's Office. It came into the Delaware County Sheriff's Office's possession in the following way: The item was recovered by law enforcement officials from the suspect's person. Therefore, I am seeking this warrant out to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

19. The Device is currently in the Forensic Lab at the Delaware County Sheriff's Office, 149 North Sandusky Street, Delaware, OH 43015.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Delaware County Sheriff's Office.

## CONCLUSION

20. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that a violation of Title 18, United States Code, Sections 471 and 472 has been committed and the items described in Attachment B, which constitute evidence, fruits, and instrumentalities of those violations are currently located in the black LG cellular phone bearing unknown serial number and with SIM card.

21. By this affidavit, I request that the Court issue a warrant authorizing a search of the black LG cellular phone bearing unknown serial numbers, including the SIM card, for the items described in Attachment B.  The LG cellular phone bearing unknown serial numbers,

9

including the SIM card is currently located in the Forensic Lab of the Delaware County

Sheriff's Office, 149 North Sandusky Street, Delaware, OH  43015.

Respectfully submitted,

TFO C-C. Gannon

TFO C.C. Gannon
Task Force Officer
UNITED STATES SECRET SERVICE

Subscribed and sworn to before me
on this ___16___ day of March 2020.

CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

1.      The property to be searched is a black LG cell phone, unknown serial number with included SIM card hereinafter the "Device."  The Device is currently located at the Forensic Lab at the Delaware County Sheriff's Office, 149 North Sandusky Street, Delaware, OH  43015.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Device described in Attachment A that relate to violations of 18 U.S.C. Sections 471 and 472 and involve William D. Sheets, II (a.k.a. Will Sheets, William Sheets) since including:

    a.    All data associated with the preparation, manufacturing, and trafficking of Counterfeit Federal Reserve Notes.

    b.    lists of customers and/or co-conspirators and related identifying information;

    c.    denominations, amounts, and serial numbers of Counterfeit Federal Reserve Notes manufactured;

    d.    any information related to sources of Counterfeit Federal Reserve Notes (including names, addresses, phone numbers, or any other identifying information);

    e.    any information recording aforesaid subjects' schedule or travel from 01-03-2020 to 01-31-2020;

    f.    all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, photographs, videos, and browsing history including:

a.   records of Internet Protocol addresses used;

b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.